IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| IAN CURRAN LYONS | : | |
| | : | |
| v. | : | Civil No. CCB-15-0232 |
| | : | |
| THE JOHNS HOPKINS HOSPITAL | : | |
| | : | |

## MEMORANDUM

Now pending is a motion for summary judgment. The plaintiff, Ian Curran Lyons, filed suit against The Johns Hopkins Hospital ("the Hospital"), alleging that the Hospital violated his rights under the Americans with Disabilities Act ("ADA"). The Hospital moved for summary judgment on June 30, 2016. (Mot. Summ. J., ECF No. 46). The plaintiff responded, (Resp. in Opp'n Mot. Summ. J., ECF No. 47), and the Hospital replied, (Reply, ECF No. 48). No oral argument is necessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons set forth below, the court will grant the defendant's motion for summary judgment.[1]

## BACKGROUND

The uncontested facts are as follows. Mr. Lyons started working at the Hospital as a clinical social worker starting on July 9, 2012. (Mot. Summ. J. Ex. 9, First Lyons Dep. Transcript 9–10, ECF No. 46-9). His supervisors included Paula Heneberry and Diane Pickett. (*Id.* 19). Mr. Lyons started as a part-time employee but had transitioned to full-time employment by September 2012. (*Id.* 18). In December 2012, the Hospital referred him to a "fitness for duty"

---

[1] The court thanks Mr. Adam Augustine Carter for his vigorous advocacy and willingness to serve as *pro bono* counsel in this case.

1

evaluation in light of his five unplanned absences from work and a complaint from an outside provider alleging that he had displayed "grossly unprofessional behavior." (Mot. Summ. J. Ex. 11, Lyons Dep. Exs. 13, ECF No. 46-11). The evaluation included a drug test, which was performed on Dec. 13 and yielded a positive result for cocaine. (First Lyons Dep. Transcript 45). Mr. Lyons then informed Charles Glicksman – the Hospital employee performing the in-person part of the evaluation – that he had used cocaine while employed by the Hospital "three to four times" and that this use was a symptom of his bipolar disorder. (Mot. Summ. J. Ex. 10, Second Lyons Dep. Transcript 2–3, ECF No. 46-10). He also indicated to Mr. Glicksman that he had used cocaine before he was employed by the Hospital. (*Id.* 3–4). In fact, he had used cocaine at least as far back as 1996. (First Lyons Dep. Transcript 4).

The Hospital did not immediately terminate Mr. Lyons. Instead, it approved a leave of absence – which the plaintiff requested – until February 25, 2013. (First Lyons Dep. Transcript 47; Lyons Dep. Exs. 18). Mr. Glicksman also referred the plaintiff to two drug treatment facilities: The Resource Group and The Kolmac Clinic. (Second Lyons Dep. Transcript 4, 21; Mot. Summ. J. Ex. 3, Glicksman Decl. 2–3, ECF No. 46-3). Mr. Lyons started treatment at The Resource Group on December 28, 2012. (Second Lyons Dep. Transcript 4–5). The Resource Group urged him to participate in its Intensive Outpatient Program (IOP), which Mr. Lyons knew would include random drug tests. (*Id.* 7, 18–19). However, Mr. Lyons declined to enroll in the IOP and then ended treatment at The Resource Group altogether in early February 2013. (*Id.* 19). After looking at its website, the plaintiff determined The Kolmac Clinic was also "inadequate" and declined to pursue treatment there. (*Id.* 21–22). Instead, the plaintiff met about once per month with Dr. Chul Kwon, who treated his bipolar disorder only. (*Id.* 22; Mot. Summ

2

J. Ex. 16, Kwon Dep. 5, ECF No. 46-16). Dr. Kwon mistakenly believed the plaintiff was also undergoing treatment for cocaine use at The Resource Group. (Kwon Dep. 3–4).

Throughout his leave of absence, the Hospital was aware that Mr. Lyons was not following the treatment options that Mr. Glicksman had recommended. In January 2013, a counselor at The Resource Group told Mr. Glicksman she had referred the plaintiff to the IOP; that she thought he was minimizing his drug use; and that she was not convinced his drug use was only tied to his mood disorder. On February 19, the counselor told Mr. Glicksman the plaintiff had ended treatment at The Resource Group without participating in the IOP, and this information was relayed to the plaintiff's supervisors. (Glicksman Decl. 3–5).

On March 26, 2013, Mr. Lyons emailed Ms. Heneberry and other Hospital employees requesting to return to work on April 15. He also requested accommodations – specifically, regularly scheduled daytime working hours and two consecutive days off each week. (Lyons Dep. Exs. 34–35). When the Hospital informed him that he needed to be cleared by Occupational Health Services ("OHS") before he could return to work, the plaintiff said he would like assurances that his proposed accommodations would be fully considered before he subjected himself to a health examination. (*Id.* 33–35). The Hospital never stated whether his proposed accommodations were acceptable; according to the Hospital, no response was given because the accommodations related to the plaintiff's work schedule, and Mr. Lyons had not yet been cleared to return. (Mot. Summ. J. Ex. 14, Osborn Dep. 13–15, ECF No. 46-14). On April 16, Mr. Lyons called OHS and asked for a "return to work assessment," but OHS told him he must first meet with the Hospital's Faculty and Staff Assistance Program ("FASAP") for an initial fitness for duty evaluation. (Second Lyons Dep. Transcript 26–29). Before that evaluation took place, the

Hospital terminated the plaintiff on April 18 because, in its view, Mr. Lyons had not complied with its drug treatment recommendations. (Osborn Dep. 5, 12). The Hospital notified Mr. Lyons of his discharge in a letter dated April 18, which he received on May 2. (Resp. in Opp'n Mot. Summ. J., Ex. 2, Lyons Exs. 6, ECF No. 47-2). Mr. Lyons claims he did not use any illegal drugs between December 13, 2012 (when he tested positive for cocaine) and May 2, 2013 (when he learned his job had been terminated). (Lyons Exs. 5). During that same time period, he also never informed the Hospital that he had stopped using cocaine, and he was never tested for illegal drug use. (Second Lyons Dep. Transcript 25, 36).

On June 4, 2013, Mr. Lyons filed an internal complaint with the Hospital's Office of Workforce Diversity ("OWD") in which he claimed he was never given an opportunity to explore workplace accommodations. The complaint form lists possible bases for discrimination; Mr. Lyons marked the box next to "disability" but not the box next to "retaliation." (Mot. Summ. J. Ex. 5, OWD Complaint, ECF No. 46-5). The Hospital abandoned that internal investigation upon learning the plaintiff had also filed an external charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Osborn Dep. 10–11; Lyons Dep. Exs. 36). In his EEOC charge, Mr. Lyons claims the discrimination he allegedly suffered took place at the earliest on March 26, 2013. As the basis for the alleged discrimination, Mr. Lyons again checked the box for "disability" but not the box for "retaliation." (Lyons Dep. Exs. 36). In a written summary included in the EEOC charge, the plaintiff claimed he requested accommodations in March 2013 but never received a reply other than a discharge letter and thus "was denied reasonable accommodation and discharged due to disability" in violation of the ADA. (*Id.*).

Separately, on March 19, 2013, Ms. Heneberry filed a complaint about Mr. Lyons to the

Maryland Board of Social Work Examiners ("the Board"). (Mot. Summ. J. Ex. 12, Heneberry Dep. 10, ECF No. 46-12). She did so because she believed the plaintiff had a substance abuse problem and was not receiving treatment. (*Id.*). The Board then brought charges against Mr. Lyons under the Maryland Social Work Examiners Act on November 8, 2013. (Lyons Dep. Exs. 37–41). In March 2014, the Board and the plaintiff agreed to a Consent Order under which Mr. Lyons was put on probation and ordered to undergo mandatory drug testing. (*Id.* 46–52). The plaintiff failed to comply with the Consent Order, in part because he failed to show up for three drug tests. (*Id.* 59). In January 2015, Mr. Lyons voluntarily surrendered his license to practice social work due to "health concerns." (*Id.* 61–63).

The plaintiff's amended complaint, filed January 22, 2016, lists three counts. Count I alleges discrimination under the ADA based on a failure to accommodate and failure to engage in an interactive process. According to Mr. Lyons, this unlawful conduct occurred both before and after he was placed on leave. (Amended Compl. ¶¶ 71–81, ECF No. 37). Counts II and III both allege retaliation. Count II alleges the Hospital's decision to terminate Lyons was retaliation for Lyons taking leave and requesting accommodations. (*Id.* ¶¶ 82–90). Count III alleges the Hospital retaliated against Mr. Lyons by reporting him to the Board after learning he had filed an internal complaint. (*Id.* ¶¶ 91–98).

**LEGAL STANDARD**

This court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331. (*See* Amended Compl. ¶¶ 4–5). Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)

(emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247–48. The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568–69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

**ANALYSIS**

Count I (Discrimination)

The ADA prohibits an employer from discriminating against a "qualified individual with a disability" because of that individual's disability.[2] *See* 42 U.S.C. § 12112(a). In general, a "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* § 12111(8). Current drug users, however, are excluded from protection: an employee is not a "qualified individual" if he is "currently engaging in the illegal use of drugs" when an employer "acts on the basis of such use." *Id.* § 12114(a). That exclusion, in turn, is modified by a "safe

---

[2] The parties do not dispute that the plaintiff's bipolar disorder qualifies as a disability under the ADA.

harbor," which provides that the exclusion does not apply to an employee who: 1) "has successfully completed a supervised drug rehabilitation program and is no longer engaging in the illegal use of drugs, or has otherwise been rehabilitated successfully and is no longer engaging in such use," 2) "is participating in a supervised rehabilitation program and is no longer engaging in such use," or 3) "is erroneously regarded as engaging in such use, but is not engaging in such use." *Id.* § 12114(b).

The parties here disagree as to whether Mr. Lyons was "currently" using drugs when the Hospital acted on the basis of that use.[3] In general, "currently" is construed broadly to mean "a periodic or ongoing activity in which a person engages (even if doing something else at the precise moment) that has not yet permanently ended." *Shafer v. Preston Mem'l Hosp. Corp.*, 107 F.3d 274, 278 (4th Cir. 1997), *abrogated on other grounds by Baird ex rel. Baird v. Rose*, 192 F.3d 462 (4th Cir. 1999). This exclusion applies to employees "whose illegal use of drugs occurred recently enough to justify a reasonable belief that [their] drug use is current." *Id.* at 279 (quoting H.R. Conf. Rep. No. 101-596, at 64). The inquiry thus has two parts. On the one hand, the length of abstinence matters because "only persons who have refrained from using drugs for some time are protected under the statute." *Id.* at 280. In particular, an employee is a current user if he uses drugs "during the weeks and months" prior to an adverse employment action – even if he is drug-free on the day of such an action. *Id.* at 278–79. On the other hand, the length of abstinence is not necessarily dispositive: also relevant is whether an employer could reasonably believe, at the time of discharge or other adverse employment action, that drug use remained an ongoing problem. *See id.* at 279–80; *see also Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d

---

[3] The parties disagree as to the relevant date for this inquiry. The Hospital claims the relevant date is March 2013, when the plaintiff requested reasonable accommodations. (Mot. Summ. J. Mem. Law 31, ECF No. 46-1). Mr. Lyons contends the relevant date is April 18, 2013, when he was terminated. (Resp. in Opp'n Summ. J. 33). Because it does not affect the analysis, the court assumes without deciding that the correct date is April 18, 2013.

847, 856 (5th Cir. 1999) ("Under the ADA, 'currently' means that the drug use was sufficiently recent to justify the employer's reasonable belief that the drug abuse remained an ongoing problem."); *Mauerhan v. Wagner Corp.*, 649 F.3d 1180, 1187 (10th Cir. 2011) (same).

Here, construing all facts in the light most favorable to Mr. Lyons, he was abstinent for about four months at the time of his discharge. Four months is not such a lengthy period that Mr. Lyons cannot qualify as a current user. *See Shafer*, 107 F.3d at 280 (current users include those who used drugs in the "months" before the adverse employment action); *see also Quinones v. University of Puerto Rico*, 2015 WL 631327, at *5 (D. Puerto Rico 2015) (current user despite three months of abstinence)[4]; *Vedernikov v. West Virginia University*, 55 F. Supp. 2d 518, 523 (N.D. W. Va. 1999) (two months); *Baustian v. Louisiana*, 910 F. Supp. 274 (E.D. La. 1996) (seven weeks); *cf. United States v. Southern Management Corp.*, 955 F.2d 914, 919–23 (4th Cir. 1992) (suggesting use is no longer current after one year of abstinence). Moreover, the plaintiff's drug use here was recent enough to justify a reasonable belief that it had "not yet permanently ended" in April 2013. Mr. Lyons has a history of cocaine use stretching back to 1996. *See Zenor*, 176 F.3d at 857 (suggesting drug use is more likely to be current where prior addiction was severe). Even after failing his drug test, the plaintiff never conceded he needed intensive drug rehabilitation. Instead, he described his cocaine use as a symptom of his bipolar disorder – even though his counselor at The Resource Group doubted that assessment and urged him to enroll in IOP. *See Vedernikov*, 55 F. Supp. 2d at 523 (employee was current user in part because, after testing positive, "he did not voluntarily come forward and admit he was a drug addict who needed rehabilitation"); *see also Shafer*, 107 F.3d at 280 (suggesting safe harbor is construed more stringently if employee "admits to recent drug use only after being caught and

---

[4] Unpublished opinions are cited not for any precedential value but for the soundness of their reasoning.

confronted"). Mr. Lyons failed to follow the Hospital's treatment recommendations because he failed to complete treatment at The Resource Group or The Kolmac Clinic. *See Shirley v. Precision Castparts Corp.*, 726 F.3d 675, 681 (5th Cir. 2013) (failure to complete inpatient treatment program supported reasonable belief that drug use was current). Mr. Lyons also did not undergo any drug testing during his leave, and the only treatment he completed before asking to return to work specifically targeted his bipolar disorder – not his drug abuse. In fact, Dr. Kwon mistakenly believed his treatments were in addition to intensive drug rehabilitation, not in place of it. Based on all these facts, the Hospital could reasonably believe that the plaintiff's cocaine use remained an ongoing problem in April 2013.[5]

For similar reasons, Mr. Lyons also does not qualify for the safe harbor. Application of the safe harbor requires cessation of drug use: an employee does not necessarily qualify for the safe harbor even if he participates in a rehabilitation program and is drug-free on the day he suffers an adverse employment action. *See Shafer*, 107 F.3d at 279. Instead, eligibility for the safe harbor "must be determined on a case-by-case basis, examining whether the circumstances of the plaintiff's drug use and recovery justify a reasonable belief that drug use is no longer a problem." *Mauerhan*, 649 F.3d at 1188; *accord Shirley*, 726 F.3d at 681. Here, for reasons stated above, it was reasonable for the Hospital to believe Mr. Lyons was "currently engaging in the illegal use of drugs" when the Hospital discharged him. Count I thus fails on the merits.

Counts II & III (Retaliation)

---

[5] The plaintiff claims the onus was on the Hospital to set requirements that would allow him to prove he was not a current user. (Resp. in Opp'n Mot. Summ. J. 35–36). The Hospital claims it did just that: it claims Mr. Glicksman told Mr. Lyons he could not return to work without undergoing IOP, (Glicksman Decl. 3–4), although the plaintiff claims Mr. Glicksman made recommendations only, (Second Lyons Dep. Transcript 20). In any event, Mr. Lyons is incorrect. The relevant inquiry focuses on the reasonableness of the employer's belief, and the exclusion may apply even to employees who are drug-free when they suffer an adverse employment action. *Shafer*, 107 F.3d at 279.

In the second and third counts, the plaintiff alleges the Hospital retaliated against him. With respect to retaliation, the ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). "By its plain language, this provision of the ADA does not require as a predicate that the person invoking it be a qualified individual with a disability." *Parkinson v. Anne Arundel Med. Ctr., Inc.*, 214 F. Supp. 2d 511, 517 (D. Md. 2002) (citing *Rhoads v. Fed. Deposit Ins. Corp.*, 257 F.3d 373, 391 (4th Cir. 2001)). These claims will be dismissed for failure to exhaust administrative remedies.

Under the ADA, "a plaintiff must exhaust his administrative remedies by filing a charge with the EEOC before pursuing a suit in federal court," *Sydnor v. Fairfax Cty., Va.*, 681 F.3d 591, 593 (4th Cir. 2012), and failure to exhaust administrative remedies on an ADA claim deprives this court of subject matter jurisdiction over that claim, *see Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300–01 (4th Cir. 2009).[6] Although a plaintiff is generally barred from raising ADA claims that do not appear in the EEOC charge, some flexibility is permitted: in particular, a plaintiff may bring claims that are "reasonably related to [the] EEOC charge and can be expected to follow from a reasonable administrative investigation" of that charge. *Sydnor*, 681 F.3d at 594. But a plaintiff has not exhausted a retaliation claim if the EEOC charge alleges discrimination only – even if the two claims arise from the same facts or from the same animus. *See Bryant v. Bell Atl. Maryland, Inc.*, 288 F.3d 124, 133 (4th Cir. 2002) ("Administrative investigation of retaliation . . . could not reasonably be expected to occur in light of [the plaintiff's] sole charge of race discrimination."); *Teasdell v. Baltimore Cty. Bd. of Educ.*, 2013 WL 4804736, at *4 (D.

---

[6] This case centered on Title VII of the Civil Rights Act of 1964, not the ADA. However, "courts have routinely used Title VII precedent in ADA cases." *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 176 (4th Cir. 2001).

Md. Sept. 6, 2013) ("That the claim alleged in the charge and the retaliation claim arise from the same facts or from the same animus is not sufficient to exhaust the retaliation claim.").

In his EEOC charge, Mr. Lyons marked "disability" – and did not mark "retaliation" – as the basis for his charge. Although that failure is not necessarily fatal to his claim, *see Teasdell*, 2013 WL 4804736 at *4, the narrative of the charge also does not allege or describe retaliation. Instead, it describes the alleged failure of the Hospital to respond to the plaintiff's request for accommodations. (*See* Lyons Dep. Exs. 36). Perhaps for that reason, the EEOC investigation also did not explore retaliation, (Mot. Summ. J. Ex. 6, EEOC Documents 1–12, ECF No. 46-6), further bolstering the conclusion that retaliation was not "reasonably related" to the EEOC charge, *see Bryant*, 288 F.3d at 133 & n.6 (concluding retaliation claim not exhausted in part because findings of administrative agency investigating the charge made no reference to retaliation). Mr. Lyons has thus failed to exhaust administrative remedies with respect to his retaliation claims. *See Miles v. Dell, Inc.*, 429 F.3d 480, 491–92 (4th Cir. 2005) (no exhaustion where plaintiff did not check the retaliation box on EEOC charge and charge narrative did not mention retaliation); *Teasdell*, 2013 WL 4804736 at *4 (same).

The plaintiff's arguments to the contrary are unconvincing. Mr. Lyons relies on the EEOC intake questionnaire (a separate document from the EEOC charge), claiming it "alleges all the facts necessary to a retaliation claim." (Resp. in Opp'n Mot. Summ. J. 29–30). But for purposes of exhaustion, this court looks only to the EEOC charge – not the questionnaire. *See Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 407–08 (4th Cir. 2013). Mr. Lyons also claims he did not know about the report to the Board until after he filed his EEOC charge. (Resp. in Opp'n Mot. Summ. J. 31). But Mr. Lyons may not skirt exhaustion by claiming ignorance: the

law requires him to amend his EEOC charge in order to exhaust the newly discovered retaliation claim. *See Balas*, 711 F.3d at 408; *Sloop v. Memorial Mission Hosp., Inc.*, 198 F.3d 147, 149 (4th Cir. 1999). More broadly, the plaintiff urges this court to not construe the exhaustion requirement strictly because Mr. Lyons did not have the assistance of a lawyer when filling out the EEOC charge. (Resp. in Opp'n Mot. Summ. J. 28). Although the court acknowledges the need for flexibility, especially when EEOC charges are completed by non-lawyers, courts are "not at liberty to read into administrative charges allegations they do not contain." *See Balas*, 711 F.3d at 408.[7]

This court will thus dismiss the second and third counts for lack of jurisdiction.

## CONCLUSION

For the aforementioned reasons, this court will grant the Hospital's motion for summary judgment. This court concludes that Count I fails on its merits and Counts II & III must be dismissed for lack of subject matter jurisdiction. A separate order follows.

12/12/2016
Date

/S/
Catherine C. Blake
United States District Judge

---

[7] Even if the plaintiff had exhausted administrative remedies with respect to his retaliation claims, the Hospital has articulated a legitimate business reason – Mr. Lyons' current drug use and his failure to attend treatment – for its decisions, which Mr. Lyons has not shown to be pretext.